Fifth case for today is 21-40798, and I'm just going to say Shemwell v. McKinney, Texas City. May it please the court. Good morning, your honors. Blero Malmazzi on behalf of the I, along with my co-counsel Shine Elahi, will be giving our opening presentation. Just by way of brief background on this case, Mr. Shemwell was the elected councilman from a single-member district within the city of McKinney. The other appellant in this case is a District 1 voter. District 1 is a single-member district. It is the only minority-majority district within the to address equal voting rights and things like that. The issue of this case really stems from the denial, district court's denial of this case, dismissing it and rendering it moot. It's the issue of mootness, your honor. The recall election that is subject of this lawsuit occurred in November of 2020. The city at that time, prior to that recall election, adopted a new charter amendment that completely changed the way recall elections were to be done in the city. Originally, we believe it was supposed to be meant to be single-member district recalls were going to be done by that district. The charter amendment clarified that those recall elections would now be subjected to a city-wide vote. In addition to that, they had other provisions in there that lowered the requirements for getting signatures for the those petitions needed to be submitted to the city council. In this context, I believe it's important because when Mr. Shumwalt was running for office and when he was first elected, it was a very racially charged environment in which he was running. There were many issues in the city, including the presence of a confederate statute, a statute that really energized the electorate and propelled him to his election. Once he was in office, he was still vocal about civil rights issues. He had been an activist up until the point he was still on the city council bench. Why isn't this case moot? You said the case was about mootness. Why isn't the case moot? Well, Your Honor, the issue stems from... I know the district court believed that because that recall election had occurred and Mr. Shumwalt was eventually recalled, therefore there was no we did not meet the capable repetition yet evading review standard. But Your Honor, I believe the elements of that, which was that the challenge action was too short in duration to be fully litigated and also that there's a reasonable expectation that the same party would be subjected to the same action again in the future. I believe we need... And that's based on what? That's based on Supreme Court precedent. No, I meant what's the reason, what grounds make you think it might reasonably happen again in the reasonably foreseeable future? Yes, Your Honor. Well, I believe first and foremost given the fact that this charter amendment was enacted specifically once Shumwalt was elected to office and we believe it was a way for the city going forward to control and to suppress activist voices on the city council. We believe that this does not stop with Shumwalt, that you know this may have been the first recall in the city's history, but the fact that once Mr. Shumwalt took office and the council decided we need to change things going forward, we believe that was problematic and that's sort of an indication that in the future they could use this against any other council member who's elected in that district to be subjected to a city-wide recall. Okay, I still don't understand why it's to the extent the claims evade review, why isn't that a problem for your client because they did not seek injunctive or expedited relief when they could have when the thing was ripe and right, nor did they seek damages that might have get rid of their claims and then now they're arguing that they evade review. So that can you help with that? Yes your honor, so the and this case actually involves two lawsuits. The first was later voluntarily dismissed, but the second was filed two months prior to the election and although it was mentioned in the lawsuit that injunctive relief would be sought, that was later you know longer than that. We don't believe those claims would have been fully litigated in time for that November 2020 election, which was originally meant for May 2020, which is when the first lawsuit was filed. They could have been litigated now and for before some other, I mean aren't you asking for an exception to the mootness rule to apply? Yes your honor. So why should we apply that exception in this context? Do you have any factual or legal reason? Well we believe, I mean the Supreme Court has given relaxed standards when it comes to that first prong and that first element. We believe a litigation of this magnitude, especially on a law that we haven't seen very much across the country and other circuit courts, there isn't many cases on point. Something like this would take time to fully litigate, but even more than just as it relates to the councilman or Mr. Shemwell, it also relates to the district one voters, who's the other, one of whom is the other opponent in this case and that voter and other like like-minded voters in that district will be subjected to this recall anytime it's presented in the city of McKinney. A single member district, someone who intends to vote for a single their vote is diluted when the entire city now has to vote. Do we overlook the fact that his district overwhelmingly recalled him? Your honor, that is, Mr. Shemwell did lose his recall election. I understand, I believe the city stated that even the district had voted to recall him, but I'd give the context that this was the first time to our knowledge that a municipal recall or a municipal election was held in a presidential election year in the November 2020 election. Mr. Shemwell obviously ran in a small district in a May election which has a much lower voter turnout and those issues in those elections are decided on just a small minute number of issues rather than being thrown in and forced to campaign citywide now, raise money citywide, and be subjected to a whole new group of voters that never elected him in the first place. We see a lot of election cases that arise in an emergency posture and the emergency nature of them is quite obvious given that everyone needs to understand the rules before the voting starts. Why did you not seek an emergency, any form of emergency relief? You recognize the need for it in the complaint but then never actually asked for it. Right, and my co-counsel can speak more to that. I will say we did raise that issue. We later determined that the likelihood of that succeeding was not very high and that we would seek the declaratory relief and just in the future if Mr. Shemwell were to run or if our other appellant were to vote in that election, we just wanted to ensure that they voted in a fair and equitable system. Do you think that the reason it wouldn't have succeeded is because of the the absence of irreparable injury or you think it's because the merits were weak? No, I mean, I do not believe the merits were weak. I believe just given the context of election law, we didn't feel that it may have succeeded initially without being fully litigated. That was our concern. Because the standard, absent irreparable injury, the standards between injunctive relief and declaratory relief are going to be virtually identical. Right. So I'm not sure I understand why you would seek one and not the other. Well, I mean, we didn't end up seeking the injunctive relief. That was more of a trial court issue. I mean, looking back, it may have been better to do that. Did Mr. Shemwell incur money damages? I assume he did from losing his seat. Money damage from losing the seat? No. Was he being paid a salary? Well, yeah. So there was a small stipend that the city council gives. That is what he lost out on. Did you request monetary relief? I believe we did in the complaint. I didn't see it. Okay. And I may be wrong about that, but that's something we can follow up on. Okay. But, you know, I mean, going back to the elements, I believe, you know, the injunction issue, we understand that is a bit of a problem, but we still believe we meet that first element, that even had we sought injunctive relief, this case would not be fully litigated. And I think that's the key word is that full litigation would have been impossible during the time constraint, even when the charter amendment was adopted and when the next election was coming up. And again, to the second element, whether there's a reasonable expectation that this will occur again, the courts have said that it does not need to mean that Mr. Shemwell will be subjected to recall again. Obviously, he would be required to run and get elected, but it's enough that other parties may be subjected to that recall and that other voters would be subjected to that recall law as well. Thank you, counsel. Thank you. Good morning, Your Honor. Your Honor, I'll briefly, my name is Cheyenne Elahi. I think I heard some of the questions that were coming from your end, Your Honor, and I will, first of all, I think to suggest that Mr. Shemwell lost the election and that kind of was amended. And I'm not saying you're implying that, but I think that has been brought up in other forms as well, that because he lost, what's the issue? He lost anyway, right? But everything, this issue is much bigger than Mr. Shemwell. It's much bigger than most of us. That's why we're here. This is not about money, damages, nothing. This is about gerrymandering in a different way. Basically saying, and anyway, it's interesting because yesterday, SCOTUS was, Supreme Court of the United States was dealing with gerrymandering case of Alabama, and one of the justices said, talked about the 14th Amendment and how it applies, and you cannot separate from race. Well, let's back up a little bit. Yes, Your Honor. That, as I understand it, the recall doesn't have to initiate in the district in which the council person is sitting. It can't initiate citywide, right? That's what they changed. They did it citywide. It initiated citywide and voted on by citywide. I submit to you today that- So someone outside his district can, oh, I missed that point. Okay. Yes, ma'am. All right. Yes, Your Honor. Sorry. And Your Honor, I submit to you- Can you talk about mootness? Because you don't have a lot of time and- I will. I will, real quick. We can't really talk about- Sure. We have to have a case or controversy. We're not generally opining about gerrymandering or- Certainly. We have to have case or controversy on specific cases. Your Honor, Fifth Circuit case from 2006 Central Individual Freedom versus Carmouche, it speaks about exactly the same situation. Facts are different, but it says that just because election happened doesn't mean the controversy's over. Moore versus Ogilvie 394 U.S. 814, Your Honor, from 1994, says the same thing. The focus should be on future elections. What are we doing about Deborah Fuller, who's going to go in District 1 and vote, knowing that the sword of Damocles hangs on whoever she elects, basically saying that if that person is outspoken, they'll be recalled under this new charter? Your Honor, I submit to you that even the mayor of McKinney will not win if you ask him to go and seek the vote out of all of Collin County. You basically expand the scope of the electorate and say, now go win, but that also defies the very idea of single-member district. I think the controversy of order dilution is extremely alive in this case and must be confronted head-on before other cities take the same route to cancel. It's a cancel culture issue. They're going to cancel people like Mr. Shamwell or anyone else who basically steps a little to the side of mainstream and say, okay, we're going to just expand the rules, change the rule, change the game, and Your Honor, that's the controversy we're here to basically ask you to reverse this case, send it back to District Court, and ask them to fully litigate it on its merit. Is it incorrect to say that they had at least 10 months, January through October, to assert their claims before they became moot? Your Honor, one, it was COVID, as you know. It was a very troubling 2020. We were in court, and I believe we actually went through the Pringle test the first day I went to court. We were seeking injunctive relief the first time around, and we went through the Pringle test, and I believe the city said they're going to be moving the, and Mr. Hofmeister can correct me if I'm wrong later on, but my recollection is that they said they'll be moving the court date, I mean the election day anyway, because of COVID. Right, but the point is, all this happened, you filed the suit. I mean, the petition was certified in 2020. There was a long time in there where you could have gotten a hearing on a preliminary injunction or a permanent injunction. Your Honor, COVID was a big thing. We even got our motion. Were the courts, I'm sorry, go ahead. No, Your Honor, please go ahead. No, you even got your motion. I was just going to say, Your Honor, even the motion dismissed was ruled on after six months, and it's nothing to do with any other docket issue. I think it's just, I mean, I'm sorry, any personal issue, it's a docket issue. Did you ask for a hearing on a motion for injunctive relief? In the first case, we did. And what did the judge say? Your Honor, we went through the Pringle test, and basically, the city agreed they were going to move the election further on, so it became sort of a mood issue at that point. That is my recollection, Your Honor. Well, I don't see how moving the election removes the, undoes the amendment. Because the litigation was going to go on, Your Honor, at that point, but COVID became so severe that Mr. Shanwell, as a council member, decided that he wasn't going to burden the city with defenses and all that, and more money to be so we basically dismissed it voluntarily. But Your Honor, the issue still remains of also Deborah Fuller, who's a voter in District 1, and her vote has been taken away, essentially, because other people can vote on their vote. She could have asked for an injunction too. True, Your Honor, but we are here on a declaratory relief. We basically want the District Court to, on its merit, hear out why these rules were changed in the middle of the game, for what purpose, and how they dilute the voters' rights in District 1, Your Honor. That is why we're asking you to reverse this. And we believe there's case law from this court itself that very much says that future election is a reason to keep something alive and to litigate it. We have your argument. Thank you. Thank you, Your Honor. Mr. Hofmeister. Thank you, Your Honor. May it please the Court, honorable members of the panel, those in attendance from the Texas A&M University School of Law, good morning. My name is Kent Hofmeister, and I represent the defendant, Appali, the city of McKinney, Texas, in this matter. I would suggest that the issue before the court today is a relatively simple, straightforward one, and that is that the question on appeal is, was the trial court correct in dismissing as moot the plaintiff's claims regarding a completed recall election, where the only remedy that the plaintiff sought was prospective relief, despite their argument that the case fell within that capable of repetition yet evading review exception to the mootness doctrine. I would submit to the court that the answer to that question is yes, that the dismissal was proper here by the trial court, because the case was moot, and the plaintiffs failed to establish their entitlement to the exception to that doctrine. Therefore, the trial court's ruling in the court below should be affirmed. We've had a number of items discussed here concerning the chronology, the sequence of events in our brief here before the court. We have set forth, I think, in pretty great detail at pages 2 through 10 of the brief exactly how all of these things unfolded. I won't go through those, but obviously if the court has any questions, I'd be more than happy to address those. But I think it's important to emphasize from the outset that we're here on an appeal of the dismissal of the second of two lawsuits, each with the same claims and each brought against the same defendant, the city of McKinney, Texas, by the same plaintiff, former Councilman Shemwell, and then in the second suit by defendant Deborah Fuller, who was a voter in District 1. Each lawsuit sought the identical declaratory and injunctive relief, that is, to stop the same upcoming recall election. Obviously, the second one was reset or rescheduled, but concerning Councilman Shemwell, and each of the claims for injunctive relief was voluntarily dismissed by the party or parties who brought the suit without ever requesting an expedited evidentiary hearing on the injunctive relief sought, and that occurred over a period that ultimately spanned, as Judge Elrod mentioned earlier, almost 10 months from the time the first suit was filed on January the 20th of 2020, pardon me, of 2020 until the recall election of November the 3rd of that same year, 2020, and that is the recall election that ultimately resulted in Councilman Shemwell losing his seat with the recall. Now, we talked about COVID. As we all know, the United States, Texas, North Texas, we were all hit hard by an unprecedented event in our lifetimes, the pandemic, and so what happened there was Texas Governor Greg Abbott on March the 18th of 2020 issued a proclamation in which he suggested to all cities, all municipalities who were going to be holding an election that May, that this is March when the proclamation comes out, that two months later when the elections are to be held, to move those to November the 3rd, which is the general election. So the City of McKinney abided by that directive essentially, like virtually all cities did, and they moved the May election to the November 3rd general election. That was a nine and a half month period of time within which the plaintiff could have brought, or plaintiffs, could have brought suit. They voluntarily dismissed the first suit on March the 18th, I believe it was, or March the 13th. Were the relevant courts closed to people to file a claim or to bring expedited relief requests? Were the courts closed from being able to file things or request relief on an expedited basis? Judge Elrod, I'm sorry, did you complete your question? Yes, ma'am. To my knowledge, the courts were not closed to be receptive to those, to that kind of relief, and I know that the procedures obviously changed, and changed pretty dramatically because we went from in-person proceedings, hearings, trial, to the Zoom technology, which was, I think, virtually new to all of us. But I will say this, I personally participated in a case that was a hearing that was heard by a district court judge, Collin County, towards the end of March by Zoom. So the relief was available. You just needed to act upon it, request it, and act upon it. But the relief could be achieved, obtained, if it was pursued, persevered. And in this case, I would submit to the court that the plaintiffs, plaintiff, plaintiff in this case, did not persevere in initiating any discovery or moving forward in either of the cases that they filed before they voluntarily dismissed their suit. Counsel, I know this is the first time the city of McKinney has removed a council member. Is this also the first time in the history of the city of McKinney that someone has attempted to remove a council member? Have there been previous attempts that failed? Judge Oldham, I don't know the answer to that question. I will say that I am unaware of any previous attempt to remove a council member. So what was the basis for the city amending its hold an election? This was a voter-initiated amendment election. So the citizens came forward with a petition to change those two particular sections of the charter, which were section 145 and section 146. For the benefit of the record, section 145 provided that fewer names needed to appear on the recall petition and the time to collect the signatures increased from 30 to 45 days. Section 146 clarified that any recall election would be citywide. Now, the city did not initiate the election. The citizens came forward with a petition for a charter amendment election and the city, once presented with that, because of its charter, had to go forward and schedule an election. What precipitated that? Do we know why the citizens were moved to request the amendment? Well, Chief Richman, I don't know the reason because we're talking about a collective body. It's not unlike trying to get into the thought processes of a city council. You can't have one council member tell you what the reason was why the council acted as it did. As we know by law, a council member, we don't like our clients to like... I'm assuming there's not, but if you know that there's evidence... I'm not aware of any reason why that came forward. I know that there was discussion in the community. As council has indicated, Councilman Shemwell had been active on some issues, and I think some members in the community took issue with that. I guess that's my point. Shemwell's own actions, it was directed at Shemwell? No? Chief, I cannot say that. I mean, again, well, there could be any number of reasons. I'm not trying to be elusive in my response. It could have just been a coincidence. Is that the city thinks, really? Well, no. I'm not saying that it's a coincidence. I mean, I think the people who signed a petition had a reason for it. I'm not saying that the reason for it was because they wanted necessarily to get rid of Councilman Shemwell. I mean, I think that was part of the discussion. I'm not going to deny that, but let me say this. We never had any discovery, so we don't know what any... I mean, while you might not be able to sign a petition, why they did, but there was no discovery here. That was never pursued. No one had the opportunity to get into that part of it. Yes, your honor. When the people bring a petition before the City Council, the City Council still deliberates over it, right? They don't have to just everything that the people of McKinney bring before it on a petition. Are we talking about a petition for recall? Sorry, I mean the petition to change the ordinance. If they have a petition to change the ordinance, it's my understanding, based on the charter, that it's really ministerial. They have to go ahead and pass an ordinance for a charter amendment election, and then it goes to the citizenry to vote. I'm sorry, I'm afraid I must have done it imprecisely. I apologize. No, no, I'm sure I asked it inartfully. I'm talking about when you change the ordinance, the city code, to change the way that the recall elections are conducted, so that instead of being district one members to be recalled or not, you're going to instead have the entire city voting on whether to recall a district one member. That change to the ordinance, to the code, the City Council still gets to debate whether and to what extent to do that, right? Are you saying that the people can just impose that on the city? Well, I mean, I think that there has to be some input from the city attorney or somebody advising the city legally as to whether something can be done, but I'm not aware of a situation where that has occurred or might occur. Well, the city here changed the ordinance, right? It could, yeah. Well, based upon the election, correct. I thought I understood you say that once you got a request like you received to change the charter, you said it's almost ministerial that the council had to pass an ordinance including the charter amendment for election. Was that what happened? I believe that that's correct. I know that that's true for the recall petition, that if the petition for recall comes before the council, then the council must... I'm talking about the charter amendment. You do. This question is, does the council do that without a vote, or do the people of the city vote on the charter amendment? The people who vote, pardon me, the citizens vote on the charter amendment, and then it goes before the council, and then I think my understanding is that an ordinance then adopts the result of the election and then puts that into place. So it's not like the city council is debating whether and to what extent to change the recall procedures? Now we're talking about recall. That's... Well, I thought we were talking about the amendment, the charter amendment that changed the recall procedure. Just the procedures. I'm not talking about the petition. Not the recall. Not the recall itself. Yes. Right. The charter amendment elects... The city of McKinney voters vote to say, yes, we want to change the charter amendment, and we want a citywide recall option. Correct. And I'm sorry, your question is? Apologize. I'm with you. Then did the voters in McKinney, Texas, are they the ones who said we want a citywide as opposed to a single district recall to change the rules of the game? Was it the voters or was it the council? Who voted on that? Oh, the voters. The voters. It was put to the voters to clarify that one section, which was 146. Did the city council have to vote to put it on the ballot so that then the voters could, or was that just a ministerial act that once they got the petition, they had to put it on the ballot and then the voters voted on it? Judge Elrod, I'm not sure that I understand or I'm clear on exactly what the process is in that regard on the charter amendment. Okay. Thank you. I can certainly submit a post-argument supplemental letter to clarify that. Okay. Thank you. Yes. The opinion, the ruling by the lower court was the correct one. The argument that the city of McKinney had before the election took place was that the plaintiffs had an interest in the litigation and that was preventing the alleged dilution of voters in the upcoming election. That was true when the city filed its motion to dismiss. It was true when the city argued on October the 20th, 22nd of 2020. But once the election took place on November the 3rd, then Councilman Shemwell no longer had any sort of justiciable interest because he sought only prospect of relief and the claims were now moot. What about Ms. Fuller? Ms. Fuller, it's the same argument. I would suggest to the court that Hall versus the plaintiff is instructive in that regard. That is an 11th Circuit case out of 2018. And there, the candidate sought a declaratory judgment that a ballot access requirement for a completed special election for the U.S. House seat was unconstitutional. The plaintiff did not prove the second prong of the capable of repetition yet evading review exception because there was no reasonable expectation that Senator Hall, the plaintiff, would have another opportunity to run, and this is the court's language, that Senator Hall would have another opportunity to run or vote in a special election for the U.S. House seat in Alabama. Because the last special election in that case... And what standards do we use to make that determination? What factors do we consider? Ms. Fuller says, you know, I don't want to... I go in and I vote for my District 1 candidate of my choice, and then I don't want to have the citywide recall election take that away again. Correct. So how do we make that factual determination that's unlikely that she'll have to worry about that ever again or reasonably ever again? That's a good question, and the Hall case talks about how, if you go back 83 years, we haven't had a special election for this particular seat in 83 years, and that was a special election, and then a regular election for that, for any seat in Alabama, senatorial seat in Alabama, takes place only 20 years, every 20 years. And how does that affect Ms. Fuller? Yes, the special election on... Pardon? I'm sorry, you're talking about the Alabama case right now. Right. But in this case, how do we know? Well, that's what I'm saying, that other courts have looked at it, and 83 was too far away, too remote, can't be a theoretical possibility, cannot be a remote possibility. 83 years is too much, 20 years is too much. I don't know that we can give any sort of a rigid standard on this, but the court here held that, and in this instance, Senator, pardon me, Councilman Shumwell had been defeated at the polls by a two to one majority vote. Ms. Fuller says, I don't want the same thing to happen if I... Setting aside what happened in District 1, but she says, I don't want that to happen city wide, I don't want to elect somebody and then have the whole city get riled up and turn against my candidate and get him voted out. How do we judge the likelihood of that occurring or not in the future? Well, I think we have to look again at the history of the city of McKinney, that this hasn't happened in over 60 years, so I think, again, it's a very remote possibility that it'll ever happen either to a candidate or to a voter. But doesn't the fact that the amendment allows the whole city to recall make it more likely that it would happen? I can't say that it would, because I don't... How do we know? I'm just saying... I don't know that we do. Again, I think it's a case by case sort of analysis, and I don't know if there's any bright line for that. At least there's none that I've been able to find in any of the case law that I've seen, and I point to the Hall case because it does talk about the remoteness of something happening and why there's not a reasonable expectation in the trial court below. Judge Jordan found the same thing in this instance as well. Would it be reasonable to say that if it does come up again, the plaintiffs would have the opportunity to go into court and get an injunction? Well, I think that if that were to happen again, any candidate could go into court to try to seek relief of some sort, and that would include Councilman Shemwell if he were to be elected. But again, as we pointed out... How about the voter, Ms. Fuller? I'm sorry. Yes. Would that voter have an avenue of relief in court to go and try to seek an injunction in that instance? Is that the question? Yes. I think that yes, they would be able to go to the court and say, we would like to seek relief for this. I'm not saying that that is going to the remote possibility of that ever happening, and I think that that is a very, very remote possibility. You say remote, and I'm just asking you, what do you base that on? How do you say it's remote? Well, we talk about a reasonable expectation, and it's kind of the flip side of that, I think. I apologize, Your Honor. I wish I had an answer for you, but I just don't know that there is one. Okay. Thank you. Unless there are any further questions from the court, I appreciate your time this morning, and thank you all. Thanks. Your Honors, I'll try not to repeat myself, but I may not be successful in that, but I'll be quick. Your Honors, first of all, I would point out that the 11th Circuit case is not controlling, obviously. We have a case, Center for Individual Freedom versus Karmush, 449 Federal 3rd, 655, from Fifth Circuit, that we believe can guide your court today, your own court, about what to do in this matter. Your Honor, we understand, and COVID is not an excuse that I'm using, but a lot of things were going on at that point where a lot of decisions were made strategically, but having said that, injunction would not have fully litigated this matter no matter what. It would still have to be, the merits would have to be established, and we would have to go to trial, which would have taken definitely beyond November. I don't think there's any doubt about that. And Your Honor, the other thing I would say to the court is that recall can happen in any upcoming election. Ms. Fuller will not have an opportunity to go and say, hey, you got to respect my vote that I put in for a particular person under District 1 mechanism where it was supposed to protect my minority majority vote. And I think District 1 is left alone. Even if you take the Shamville equation out, Deborah Fuller is left alone hanging in the wind because unless there's a recall, she can't go. Unless there's a district, citywide recall of a District 1 council member again, and she's still living in the District 1, she won't have that opportunity. So I want you to, if you could kindly focus on her dilemma as well. And Your Honors, I would say that they could not really, and I don't mean my opposing council, either gentleman, I'm talking about the city itself, could not really answer what was the reason behind this. The reason behind this is majority rule. To make sure that that one district doesn't elect anyone who is outspoken or even a little different and is not racial. District majority minority voters can elect a white person to reflect their political ambitions and agendas. But the 75% of the city will still keep check. And that goes against the very constitutional idea of a single member district. Then why do they even have it? Then just get rid of it. It's a farce. We're going to control you, no matter who you put up there. You better watch out. We get that. Oh, sorry. Am I belaboring the point? No, we're trying to decide if this case is moot or not. Your Honor, mootness is, that's what I'm saying. That controversy remains with Deborah Fuller. And I believe that this case under your own prior rulings of your district, of your circuit, sorry, basically keeps it alive. Well, that's what we do with the prong one. The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration. You're talking about prong two, reasonable expectation that the same complaining party would be subjected to the same action again. And we had a lot of questions for your friend on the other side about that as well. But prong one seems to be a problem because you bear the burden on it. And was the duration too short to be fully litigated prior to its cessation or expiration? And I'm not sure. I know the answer. So can you help with that? Yes, Your Honor. In our estimation, with all due respect to the district court, we do believe so. Even our motion dismissed took six months to be ruled on. And the court itself, Suspante, raised the issue of mootness. Our esteemed opposing counsel had not even raised it. Did you ever say, look, we got to get this show on the road because this is becoming moot. If we don't get a ruling by such and such date, even if you don't seek an emergency relief, did you say we have a concern of mootness ourselves? Your Honor, I'm just a lowly attorney. I cannot make demands on the federal court. But Your Honor, we did obviously try to find out what's going on. But Your Honor, I do believe that's the problem that concerns me. No discovery was filed. No motion to expedite was filed. No motion to have a temporary injunction that you could do a trial on the merits at the same time, agree to convert a temporary injunction hearing to a permanent injunction. Or even a temporary injunction would have gotten you well down the road if you won. Your Honor, I guess we were waiting to see what the judge would rule on the motion dismissed. We had a really positive experience in the arguments, I'll be honest with you. Maybe similar to here. But we didn't expect the ruling we got. So maybe I understand the concern, Your Honors. But I do believe that Deborah Fuller's claim, if you focus on that, we couldn't have done much at that point because she was just coming in as a voter. And I do not think she had the same standing as arguments as Mr. Shamwell. So we needed to see if... I don't see how either she had standing or she didn't. No, not standing. I believe arguments. That's why I misphrased it. Well, she's got the same arguments. I don't want this to be put to a vote to the whole city. As a voter, though. As a voter. I don't want... Either she had standing to bring that or she didn't. And if she did, she's obligated to get in there and try to get a ruling to protect her rights. I understand. Before it becomes moved. And that's why we're here, Your Honor, hoping that you would reverse and give her her rights. And if she didn't have standing, then we wouldn't be able to give any relief anyway. Right. I misspoke standing. I meant to say arguments. I apologize, Your Honor. Thank you. Well, that will conclude the arguments.